# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| STORMIE L. POPE,<br><br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER, SOCIAL<br>SECURITY ADMINISTRATION,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)   Case No. 4:24-cv-00238-SGC<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION[1]

The plaintiff, Stormie L. Pope, appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB"). (Doc. 1).[2] Pope timely pursued and exhausted her administrative remedies, and the Commissioner's decision is ripe for review pursuant to 42 U.S.C §§ 405(g) and 1383(c)(3). For the reasons discussed below, the Commissioner's decision is due to be reversed and remanded.

---

[1] The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 10).

[2] Citations to the record in this case refer to the document and page numbers assigned by the court's CM/ECF document management system and appear in the following format: (Doc. __ at __). Citations to the administrative record (Doc. 8) refer to the page numbers assigned by the Commissioner and appear in the following format: (Tr. at __).

## I.  Background

### A. Statutory and Regulatory Framework

To establish eligibility for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). A claimant must also show she was disabled between her alleged onset disability date and her date last insured. *Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 831 (11th Cir. 2011) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979)). The Social Security Administration ("SSA") follows a five-step analysis to determine whether an individual is eligible for disability benefits:

1. The Commissioner determines whether the claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled; otherwise, the Commissioner proceeds to the second step.

2. The Commissioner then determines whether the claimant suffers from a severe physical or mental impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least twelve months. If there is no severe impairment, the claimant is not disabled; otherwise, the Commissioner proceeds to the third step.

3. Next, the Commissioner determines whether the Step 2 impairment meets or equals one of the "Listings" found in 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, the claimant is disabled and the claim is granted;

otherwise, the Commissioner determines the claimant's residual functional capacity ("RFC") and then proceeds to the fourth step.

4. The Commissioner then compares the claimant's RFC with the mental and physical demands of the claimant's past relevant work. If the claimant can perform past relevant work, the claimant is not disabled; otherwise, the Commissioner proceeds to the final step.

5. At the fifth step, the Commissioner determines whether the claimant can perform any other work that exists in substantial numbers in the national economy in light of the claimant's RFC, age, education, and work experience. If so, the claimant is not disabled, and the claim is denied. If not, the claimant is disabled, and the claim is granted.

*See* 20 C.F.R. § 404.1520(a) and (b) (Step 1); 20 C.F.R. § 404.1520(c) (Step 2); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (Step 3); 20 C.F.R. § 404.1520(e-f) (Step 4); 20 C.F.R. § 404.1520(g) (Step 5).

## B. The ALJ's Decision

Pope applied for benefits in May 2021, claiming she became disabled on April 1, 2021, when she was 28 years old. (Tr. at 34). Her application was denied, and she requested a hearing before an administrative law judge ("ALJ"). (*Id.* at 228, 243). At the March 2023 hearing before the ALJ, Pope testified she suffers from fibromyalgia, inflammatory arthritis, chronic fatigue, and depression. (*Id.* at 190-196). She last worked part-time in 2021 at a gas station but left that job because she could not stand for long periods due to back and ankle pain. (*Id.* at 191). She also previously worked as a certified nurse assistant; at Wal-mart as a cashier, sales clerk, stocker, stationary department manager, and personal shopper;

and as a cashier/general employee at a garden general store. (*Id.* at 198-200). At the time of the hearing, she lived with her school-age son. (*Id.* at 194).

Regarding daily activities, Pope helps her son get ready for school; he rides to school with a neighbor because Pope is not comfortable navigating the stairs or driving. (*Id.* at 194). She rests for an hour or two and then attempts to perform household chores like laundry; after completing a chore, she rests. (*Id.*). She prepares meals but rests on a chair because she cannot stand for long periods. (*Id.*). She estimates she lies down for 4-5 hours in a given day. (*Id.* at 195). She takes muscle relaxers, but they make her drowsy and unable to function. (*Id.*). She does not shower daily because it is a difficult chore for her. (*Id.* at 194). She cannot walk the length of a block without pain. (*Id.* at 193). She sleeps four hours on a good day and feels depressed. (*Id.* at 195-96).

Following the hearing, the ALJ denied Pope's claim. (*Id.* at 24-35). The ALJ first found Pope met the SSA's insured requirements through December 31, 2026, and did not engage in substantial gainful activity after the alleged onset date of April 1, 2021. (*Id.* at 36). At the second step, the ALJ determined Pope had the following severe impairments: fibromyalgia and obesity. (*Id.*).

At the third step, the ALJ determined Pope's medically determinable mental impairments of depressive disorder and anxiety disorder did not meet or medically equal the severity of one of the Listings. (*Id.*). The ALJ found Pope had only mild

limitations in (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing herself. (*Id.*). Because Pope's mental impairments caused only mild limitations, the ALJ assessed them as nonsevere. (*Id.* at 38). The ALJ also found Pope had nonsevere impairments of migraine headache disorder, irritable bowel syndrome, and obstructive sleep apnea, none of which had more than a minimal effect on her functional ability. (*Id.* at 37).

Before proceeding to the fourth step, the ALJ found Pope's impairments could reasonably be expected to cause some of her alleged symptoms and functional limitations but her statements about the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (*Id.* at 39). The ALJ determined Pope had the following RFC:

> [Pope can] perform light work as defined in 20 CFR 404.1567(b) except she is limited to no more than occasional climbing of ramps and stairs, but she is never to climb ladders, ropes, and scaffolds. The claimant is limited to occasional stooping, kneeling, crouching, and crawling. She can perform frequent balancing. The claimant should avoid all exposure to workplace hazards such as dangerous moving machinery and unprotected heights. She should avoid all exposure to extreme temperatures of heat as well as cold and should work in climate controlled environments.

(*Id.* at 38). The ALJ observed that "[f]ibromyalgia syndrome is a chronic musculoskeletal disorder characterized by pain, muscle stiffness, pervasive fatigue,

and non-restorative sleep, often with an absence of abnormal diagnostic findings and laboratory tests." (*Id.* at 39). He concluded that Pope's treatment records reflected examinations that were generally normal. (*Id.*). For instance, an August 2022 examination of her musculoskeletal system indicated Pope had normal range of motion, and her neurological exam was also normal with no deficits. (*Id.*). In September 2022, her initial consult with Dr. David McClain reflected Pope quit her gas station job in 2021 because of low back pain, as well as leg and foot pain. (*Id.*). A prior visit with Dr. Vishala Chindalore confirmed a positive antinuclear antibody, and Pope reported a family history of lupus and rheumatoid arthritis. (*Id.*). A November 2022 visit to McClain revealed Early Sjogren's Abs was negative. (*Id.*). Pope reported pain primarily in both ankles, her right hip, and her right shoulder, and she confirmed that Motrin helped. (*Id.*). She reported swelling with repetitive movements. (*Id.*). She recovered well from a laparoscopic hysterectomy on November 2, 2022. (*Id.*). She noted two hours of morning stiffness; fatigue was not worse; but dry eyes were worsening. (*Id.*). Pope's physical examination was generally normal except for some soft tissue discomfort that included 13 of 18 total tender points, and she had no edema. (*Id.*). Both her extremity and neurological exams were normal. (*Id.*). Pope's body mass index was 46.94, and she was prescribed strength training and dietary management education. (*Id.*). She also reported brain fog. (*Id.* at 40).

The ALJ found persuasive the opinions of the state agency consultants, Kristin Bailey and Krishna Reddy, because they were "grounded in the medical evidence, they have extensive experience with agency policy regarding the program requirements for disability, and their findings are supported with explanation and specific citations from the evidence." (*Id.* at 40). In particular, Dr. Reddy limited Pope to light work and several postural limitations, and Dr. Bailey opined that Pope had only mild mental limitations. (*Id.*). The ALJ found only partially persuasive the opinions of state agency consultant Dr. Gary Smith because he found Pope could frequently perform postural activities, but the record as a whole indicated Pope should be limited to occasional postural activities. (*Id.*).

The ALJ found "not fully persuasive" treating physician Dr. David McLain's opinion because the severity of his report was not supported by his own treatment records. (*Id.*). Dr. McLain's notes generally reflect normal examinations of Pope except for soft tissue discomfort in 13 of 18 tender points. (*Id.*). His records further reflect Pope's appearance, level of distress, neurological examination, balance, gait, motor, memory, and cognition were normal. (*Id.*). Nevertheless, he opined that Pope could work no hours of the day, could stand for 30 minutes at a time, could stand for 30 minutes in a workday, could sit one time for 15 minutes in a workday, and could sit for no hours in a workday. (*Id.* at 40, 745). Dr. McLain also opined that Pope could do no lifting and could never bend

7

or stoop. (*Id.*). The ALJ concluded that Dr. McLain's severe limitations were not supported by his records or the other evidence of record. (*Id.* at 42).

At the fourth step, the ALJ found Pope could perform her past relevant work as a cashier because the vocational expert ("VE") testified that based on Pope's age, education, and RFC, she would be able to perform her past work. (*Id.* at 41). Proceeding to the final step, the ALJ concluded that Pope was a younger individual on the alleged disability onset date. (*Id.*). She had at least a high school education, and transferable skills were not an issue because the Medical-Vocational Rules framework supported a finding that Pope was not disabled. (*Id.*). Nevertheless, Pope's ability to perform a full range of light work was impeded by additional limitations. (*Id.*). Finally, the ALJ concluded that based on Pope's RFC, there were a significant number of jobs in the national economy she could perform, including retail marker (approximately 136,000 jobs nationally), router (31,000 jobs), office helper (10,000 jobs), document preparer (16,000 jobs), surveillance systems monitor (2,800 jobs), and callout operator (2,700 jobs). (*Id.* at 42). Based on this evidence, the ALJ ultimately concluded Pope was not disabled since the date she filed her application and, therefore, was not entitled to benefits. (*Id.*).

The Appeals Council denied review of the ALJ's decision, and that decision became the final decision of the Commissioner. (*Id.* at 1); *see Fry v. Massanari*,

209 F. Supp. 2d 1246, 1251 (N.D. Ala. 2001) (citing *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)). Thereafter, Pope filed this action. (Doc. 1).

## II. Standard of Review

A court's role in reviewing claims brought under the Social Security Act is narrow. Its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). A court defers to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but closely scrutinizes the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). A district court reviews the Commissioner's legal conclusions *de novo*. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

## III. Analysis

Pope presents five challenges to the ALJ's decision. First, she contends the ALJ erred by failing to account for all the symptoms and limitations related to her

fibromyalgia, specifically her complaints of fatigue and fibromyalgia-related mental limitations. Second, she argues the ALJ did not properly explain, articulate, and assess all the medical opinions as required by 20 C.F.R. § 404.1520c. Next, she argues the Appeals Council erred when it denied review despite the receipt of additional evidence. Fourth, she complains the ALJ's decision is not supported by substantial evidence. Finally, she urges the court to order Sentence Six remand based on Dr. McLain's second opinion. As explained below, the undersigned has concluded this matter is due to be remanded because the ALJ neither accounted for Pope's fatigue in crafting the RFC nor explained why she did not include any fatigue-related limitations.

In March 2021, Pope reported being "tired all the time" with other symptoms including lethargy, inattention, and confusion. (Tr. at 591). Nurse Practitioner Kristie Burt concluded Pope's most important issues were chronic fatigue and daytime sleepiness along with somatic symptoms she believed to be depression. (*Id.*). Pope complained to Burt of fatigue and exhaustion again two weeks later, and Burt referred her to a rheumatologist. (*Id.* at 595).

During a March 2021 sleep study, Pope complained of "trouble staying awake during the day and also while driving." (*Id.* at 511). She reported difficulty staying awake while driving for 8 years and staying awake during the day for the prior year. (*Id.*). Dr. Baseer Salman believed Pope's history of extreme daytime

sleepiness suggested idiopathic hypersomnia or narcolepsy, but he thought it could also be the result of obstructive sleep apnea. (*Id.* at 513). While Pope was diagnosed with obstructive sleep apnea in April 2021 (*id.* at 517), this diagnosis did not explain her severe degree of daytime sleepiness; individuals with sleep apnea usually present with a mild to moderate degree of daytime sleepiness. (*Id.* at 519). In Dr. Baseer's opinion, "the severe degree of daytime sleepiness is not simply due to obstructive sleep apnea." (*Id.*).

In July 2021, Pope visited Dr. Chindalore for fibromyalgia. (*Id.* at 564). She reported "constant" symptoms of pain and associated fatigue. (*Id.*). She again complained of fatigue in two October 2021 visits with Dr. Chindalore, though at the second visit she reported fatigue is "some better." (*Id.* at 645, 648). She agin complained of fatigue at visits with Dr. Chindalore in December 2021 and February 2022. (*Id.* at 640, 642). Her symptoms were unchanged in April 2022 despite use of a CPAP machine for sleep apnea. (*Id.* at 696, 699). Her symptoms were again unchanged in May 2022. (*Id.* at 706-707).

In September 2022, Pope visited Dr. McLain, to whom she complained of fatigue and other symptoms. (*Id.* at 714). At a follow up visit, Dr. McLain assessed moderate symptoms of Sjogren's syndrome, but he concluded "the problem is worsening." (*Id.* at 711). Associated symptoms of Sjogren's syndrome include fatigue, difficulty concentrating, and memory impairment. (*Id.*). Dr. McLain

concluded Pope had fatigue and brain fog. (*Id.* at 714). In a February 2023 medical statement, Dr. McLain opined that Pope had chronic fatigue and sleep disturbance; her fatigue and malaise were "severe." (*Id.* at 745-46). Further, at the March 2023 hearing, Pope testified that she lies down for about 4-5 hours in a normal day and that her medication makes her so drowsy she is unable to function. (*Id.* at 79).

Pursuant to 20 C.F.R. § 404.1545(a)(2), the Commissioner must consider all medically determinable impairments (both mental and physical), including "medically determinable impairments that are not 'severe,'" "when assessing a claimant's residual functional capacity. The Eleventh Circuit has also stated that "[c]onsideration of all impairments, severe and non-severe, is required when assessing a claimant's RFC." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268 (11th Cir. 2019). "The ALJ must also consider a claimant's medical condition taken as a whole." *Id.* at 1269; see also *Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054, 1065 (11th Cir. 2021) ("Like the ALJ in Schink, the ALJ here was required to consider all of Pupo's impairments, severe or not, when evaluating her RFC. The ALJ did this for Pupo's other impairments, such as back pain, obesity, and depression, but failed to mention any impact that her incontinence might have had on her RFC during the relevant time period.").

The ALJ did not dispute Pope's fibromyalgia diagnosis, instead concluding it was a severe impairment at step two. While she generally found Pope's

statements about the intensity, persistence, and limiting effect of her symptoms were not entirely consistent with the medical and other record evidence, the ALJ provided no clarity on this conclusion. She, therefore, appears to have broadly rejected Pope's testimony about the severity and limiting effect of her symptoms. The Commissioner argues that Pope's daily activities conflict with her alleged brain fog and fatigue, but the ALJ did not explicitly reach that conclusion; indeed, the ALJ did not discuss fatigue at all in her evaluation of the medical evidence or construction of Pope's RFC despite her recognition that pervasive fatigue is a characteristic of fibromyalgia.

The court notes that the ALJ assessed Pope's sleep apnea as non-severe; she did not, however, explain whether she assessed Pope's ongoing reports of severe fatigue to be associated with sleep apnea or fibromyalgia even though she recognized fibromyalgia "is characterized by . . . pervasive fatigue" and Dr. Baseer noted Pope's fatigue was not likely attributable to sleep apnea. (Tr. at 39). The ALJ also did not explain why she discounted Pope's testimony concerning her fatigue and her multiple reports of fatigue to medical providers.

It further appears the ALJ discounted Dr. McLain's opinion in its entirety because of Pope's generally normal physical examinations. The "hallmark" of fibromyalgia, however, is a lack of objective evidence; instead, fibromyalgia is

generally diagnosed mostly on an individual's described symptoms rather than medical or laboratory signs. *See Moore*, 405 F.3d at 1211.

Because the ALJ did not fully evaluate the evidence of Pope's fibromyalgia, her reference to normal examination findings does not necessarily constitute substantial evidence to support her decision. *See, e.g. Atkins v. Comm'r of Soc. Sec.*, No. 3:19-CV-142-J-MAP, 2019 WL 6838512 (M.D. Fla. Dec. 16, 2019), at *4, (explaining that in fibromyalgia cases, "physical examination will usually yield normal results - a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions"); *Virginia G. v. Comm'r, Soc. Sec. Admin.*, No. 2:20-CV-00265-JCF, 2022 WL 16709721, at *6 (N.D. Ga. Mar. 10, 2022); *Burroughs v. Massanari*, 156 F. Supp. 2d 1350, 1366 (N.D. Ga. 2001) (remand was appropriate because, apart from muscle and soft tissue pain, the most common symptoms of fibromyalgia are undue fatigue, trouble sleeping, and joint pain).

This court is left to speculate about whether the ALJ overlooked Pope's reported fatigue, discounted it entirely, or found it did not significantly limit her capacity for work. Accordingly, this matter is due to be remanded because of the ALJ's failure to address the impact—if any—of Pope's fatigue on her RFC. Because the court has concluded that remand is appropriate, it declines to addresses Pope's remaining arguments regarding error by the ALJ and Appeals Council. *See Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (stating

that where is remand is required, it may be unnecessary to review other issues raised). Nevertheless, her arguments about the ALJ's potential errors are highlighted for the ALJ's consideration on remand.

## IV. Conclusion

Upon review of the administrative record and considering all Pope's arguments, the court finds the Commissioner's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is due to be reversed and remanded for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

A separate order will be entered.

**DONE** this 21st day of March, 2025.

_____
STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE